Good morning, your honors, and may it please the court. With the court's permission, I'd like to reserve three minutes for rebuttal. The district court's order should be reversed for two independent reasons. The rule that Mr. Reid advances, one that requires officers to stand idly by when confronted multiple signals of criminal activity, is a rule that finds no support in the Fourth Amendment. The district court erred first by failing to address and find that search of the vehicle. Can I ask you a factual question on the probable cause front? There's two separate physical events going on. At one point, Mr. Terry's being detained, Mr. Terry, Mr. Mr. Reid's being detained on what you claim is a Terry stop. And during that Terry stop, you learn that there's a Fourth Amendment waiver. Not in the record. We have no idea what the Fourth Amendment waiver is. The actual contents of the waiver are not in. What we do have is testimony from officers. Right, that someone told them there was a Fourth Amendment waiver. That they conducted a computerized records check. Right, but we don't know the terms of it. One of the officers testified that he was on a general summary probation term, and in his experience, all probation terms in California contained a suspension. Okay, let's come back to that because I have a here. In the meantime, other officers have watched Mr. Reid go to his car, put something in the backseat, and they look through the window, and it appears to be the outline of a gun. Correct? At the time that the officers searched the car, are they aware that Mr. Reid has a prior record? Officer Stewart is the one that ordered the search. Right. He was aware, based on the radio communications, that Mr. Reid was a Fourth Waiver subject. No, put aside the waiver. What I'm interested in is whether or not the officer, when this car was searched, they were aware that he was a, in effect, a prohibited possessor because he had a prior conviction. At the time that they saw the outline of the firearm? Well, at the time that they actually entered the car. I don't believe, well at the time they entered the car, yes, they had, they understood that because he was a Fourth Waiver, he had a prior felony conviction. Okay, is it because you can only have a prior felony conviction for a Fourth Waiver? No, an individual can have a prior, can be on summary probation for a misdemeanor term in California. Okay, is it illegal in California for someone who has a prior felony conviction to possess a firearm? Yes, Your Honor, that's contained in a separate provision of the The reason I ask is, I don't think your brief makes this argument, but let me put together a set of facts. The police know that somebody has put in a car what appears to be a firearm, and they then determined that he couldn't legally have possessed that firearm because he's a felon. Would that give them probable cause to search the car independent of the Fourth Waiver? The discovery of the felony conviction could only come after Mr. Reed was initially contacted, detained pursuant to the Terry stop, his identity determined. Right, right, we have a separate issue there about whether their learning of his felony conviction was legal, but I'm just saying if that were legal, if they legally learned of his brief, that that's part of the probable cause determination, is it? What we did with the briefing is we created two independent scenarios. That's right, and that's why I'm asking. But they are not, they're not truly independent, are they? If the Terry stop was legal, then didn't you derive probable cause to search the car from that stop independent of his Fourth Amendment waiver? We did, Your Honor, and that's why we actually segregated it out, without officers considering anything learned from the Terry stop. No, no, no, see you're still, you're having, Judge Lippis, you're having difficulty. If the officers hadn't learned anything from the Terry stop, they wouldn't have known of this gentleman's felony conviction. Correct. And under those circumstances, if you know of his felony conviction, then you know there's probable cause that he's guilty because felons are not allowed to carry firearms. Absolutely. So I'm trying not to segregate the two scenarios. I'm trying to figure out whether at the time the officers went into the vehicle, they had already learned of this gentleman's felony conviction. They did, Your Honor. Factually, they understood that he had a prior felony conviction and that he had a Fourth Amendment waiver. Counselor, if that's, what's confusing to me is, if I were, the probable cause analysis in your brief seems to relate not to an awareness that he had a felony conviction, but to the probability that he had committed a violation of California law involving the illegal possession of a concealed weapon. You seem, with respect to that avoid everything that they learned from the stop, do I misread the probable cause analysis of your brief? Again, that seems to have nothing to do with an awareness that he had a record as a felon. Correct. So in the briefing, we focused on the probable cause that officers had independent of the stop so that the fruits analysis would not include that. Well, and see, my difficulty with that, just to lay out, is that I don't think you had probable cause independent of the stop to go into the car. You may have had a fourth waiver, that's a separate issue, but, so, I don't, assuming that's true, assuming that independent of the stop, had he not been stopped, that they'd just seen somebody do this and they said, okay, we want to search the car, I have difficulty concluding that you had probable cause. If that's the case, then what I'm trying to figure out is whether or not you have to rely on the stop to get your probable cause. And again, put aside the waiver, which is an independent issue. So there's a separate California concealed weapons offense that we relied on in our briefing, and under California law, it's illegal to conceal and carry a firearm on your person or in a vehicle. Unless you have a permit. Which is an affirmative defense. Well, so this is it, you're positioned that every time someone has a concealed weapon, there is probable cause to search him? In this instance, however, it was married, the view of the silhouette of the firearm was married to the circumstances in which officer saw him. Well, so what was there about Mr. Reed that suggested that he illegally was possessing this firearm? A number of reasons, Your Honor. When officers rolled into the park, he was the one that first rushed away. He appeared to Why does that suggest he was illegally possessing the firearm? Because he attempted to elude and evade contact with law enforcement officers, went to the vehicle, was seen evidently depositing something, which is where the silhouette of the firearm... Right, but you have to have, it has to be more likely than not that this, that a crime has been committed. We're looking for probable cause now, not the Terry stop. And that, and that this gentleman is the one who's The question is that if a California citizen walks away from the police and puts a firearm, which he's entitled to possess under the Second Amendment, into his car, there's probable cause to believe that he's committed a crime. When a gang member or an individual wearing... You didn't know he was a gang member. You just knew that he was, he was in the presence of gang members. In a gang park, on a gang holiday, hurries out... In gang gear. In gang colored clothing, yes, your honor. Hurries out of the park in, in reaction to officers' presence. And you... By the way, I think that's plenty for reasonable suspicion for a Terry stop. So I'm not, I'm not trying to minimize it. I'm just having some difficulty figuring out why, if carrying a firearm is not per se illegal in California, put aside how the Supreme Court is going to rule on depending cases, why the fact that, that somebody who puts it into his car has automatically then given you suspicion that he's not entitled to have it. Well, that's really no different than the circumstances that were confronted by the courts that found there was probable cause on the basis of a concealed firearm being observed in a vehicle. So Galavis is an example, for example. United States versus Hatton is another example. The United States pointed to United States versus Stevens from this court, the Ninth Circuit, where they found that the view of a firearm, concealed firearm in a vehicle was enough to have probable cause that it was in violation of concealed firearms laws under Hawaii law. Those cases are directly on point here. So I guess your argument is that, given all the circumstances that you've described, the way he reacted to the presence of the police, all the other things you've talked about, that he's not acting like someone who feels he has in his possess... Legally has in his possession a gun for which he has a permit. He's acting like somebody who has a guilty state of mind. Yes, Your Honor. And for those reasons, we would actually agree that there was reasonable suspicion to conduct the stop in the first place. Right. And so let me just... I know you're overtime, so let me just make sure I understand your position. If there was reasonable suspicion to conduct the Terry stop, and the police thereby learned that Mr. Reed had a felony conviction, then they didn't search the car until after that, right? That's correct. So they would have had knowledge at the time, wholly apart from the concealed weapons law of probable cause that he had violated the law by being a felon in possession. We would agree with that, Your Honor, but independent of... Don't fight me on it. I understand it wasn't something you thought of. It wasn't something I thought of either. My question is, on that set of facts, we look at sets of facts here. On that set, we don't look at the officer's subjective... On that set of facts, isn't there probable cause? Yes, Your Honor. That's all... But just to be clear, do you make that argument in your briefing at all? The analysis that Judge Hurwitz just articulated, do you? Again, the probable cause analysis in your briefing, I think, is very different than the analysis that Judge Hurwitz just articulated. And this court can affirm on any ground that appears in the record. But I do wanna note, though, once officers discovered that Mr. Reed had a suspicionless search condition, then under United States... Excuse me, whether it's suspicionless or not, under United States v. Knight, in this case, there was reasonable suspicion to stop Mr. Reed in the first place. Here's my difficulty with your waiver argument, just so you understand. We don't know what the waiver says. And we have some cases, and your opponent cited one, that suggest that not all waivers and not all circumstances allow searches. The district judge never addressed that. And so if we were to rely solely on the waiver, I think we'd have to have a better record. So I'm just saying... I understand you'd rather win on the basis that you briefed rather than some other one. I'm just telling you what the difficulty with that argument is. Ultimately, we would agree that there was probable cause before officers searched that vehicle and retrieved it. And for that reason, we also would agree that the district court's orders of punishment by RIT be reversed. Did you know what the underlying crime was for which the defendant had been adjudicated and convicted? I don't believe that's in the record. I don't believe that the... Then you can't really cite Knight, because that only has to do with search conditions of violent underlying crimes. No, Your Honor. Knight was a summary probation for a drug offense. So this is a Supreme Court case that came out where the Supreme Court said that a search conducted pursuant to a summary probation condition where it was... Wasn't it a parole condition in Knight? Wasn't it a parole condition in Knight? It was a summary probation condition, 122 Supreme Court 112 in 2001. And in that case, the Supreme Court concluded that if there was reasonable suspicion, then on the basis of the probation condition, officers could actually go into a home, something far more intrusive than happened here. For that reason, my colleague's citation to United States versus job is simply irrelevant. Well, doesn't Laura suggest that if it's a probation condition, we look at the nature of the intrusion and we do a weighing? Forget job for the moment. And that's for suspicionless searches, Your Honor. In this case, Your Honor has agreed that there was reasonable suspicion to conduct a Terry stop at Mr. Reed. Because there was suspicion, reasonable suspicion to make that stop, then the subsequent search pursuant to the probation condition was not a suspicionless search. It was one based in reasonable suspicion, which the Supreme Court in United States versus Knight categorically blessed as reasonable under the Fourth Amendment. So for that reason, once officers discovered Mr. Reed's probation status and searched the vehicle, United States versus Knight absolutely blessed it under the Fourth Amendment. Because you had suspicion? Yes, Your Honor. Okay. Thank you very much. Thank you, Your Honor. I'm sorry we've taken you over your time. Counsel? Thank you. May it please the court, James Fife of Federal Defenders, appearing for the appellee, Mr. Reed. I think the district court correctly applied the legal principles, reasonably determined that there was a direct and unattenuated connection between the unlawful Terry stop and the seizure of the firearm in this case. The government simply doesn't show that there was an independent source. I think Judge Hurwitz put his finger precisely on the issue, is that the district court below, specifically on pages 25 to 27 of the excerpt of record, in her order, addressed out of prudence because the government, again, didn't raise it below, whether there was an exception to Wong Sung provided by the probable cause analysis that they presented. The court went ahead and did an attenuation analysis and found that there was not an attenuation of the primary taint. Did the court find Wong Sung is a racial case? Did the court find that Mr. Reed was stopped because of his race as opposed to his gang, apparent gang membership? No, Your Honor, that wasn't in the order. I mean, there were quite a bit of, I would say there's some racial overtones to it. Sure, it may be a gang of African Americans. I think that's true. So let's go back, because I think you correctly say the linchpin of the case, one way or the other, is the legality of the Terry stop. Yes. Pretty low standard for Terry's suspicion, the Supreme Court tells us. And the district court admitted that as well. Right. And so what we have here is someone who walks away, appears nervous, puts what appears to be a gun in the car. Now, they don't know that when they stop him. They don't know that it appears to be a gun, but they know that he's gone to his car and put something in it and then returned to the park. Not a lot, but why isn't that enough to give rise to Terry's suspicion? I respectfully disagree, Your Honor. I think that, let me, I would characterize the record as undisputed somewhat differently about that. What Sergeant Spurlock saw was they saw Mr. Reed among, when they rolled into the park, they got what, as the district judge said, the police got what they expected, a bunch of people scattered when the police car rolls into the park. And he appears to be a gang member, that's not enough. He walks away, that's not enough. Correct. But he does something else. He goes to the back seat of a car, puts something in it. At that point, the officers don't know what he's put in it, but puts something in it, stays in the car for five to seven seconds, and then shuts the car and returns to the park. Yeah, something that the district court characterized as a hunch. And we know hunch, what hunch means in the Terry's circumstances. Counsel, it seemed to me that the, arguably, the district court did hear what district courts are not supposed to do in conducting the reasonable basis for the stop. It acknowledged factors that seem suspicious, but looking at them in isolation could give each factor an innocent explanation, but it never seemed to do the totality of the circumstances analysis that the Supreme Court has said has to be done. There could be an innocent reason for going to the car. There could be an innocent reason for putting something in the car, walking back to the park. There could be an innocent reason for wearing the colors. Yes. But you start putting it all together, it has a somewhat more suspicious cast. Well, Your Honor, I think the district court mentioned twice, and I cited them in my brief, that in her order, she twice acknowledged Arvizu and the Valdez Vega. She acknowledged twice that the standard is the totality of the circumstances. She says that twice, and then she says, on the basis of all the evidence. I mean, she's perfectly aware. This is a very experienced judge. Judge Bichont was a federal prosecutor. She was a state judge for, I think, a decade. She's been a district judge for several years. She's aware of the standard. She articulated... So what's our standard of review here? The standard review, I'm glad you asked that. It's normally, it's de novo plus under Ornelas. Right, because what you said, and I think you're right, is the relevant facts taken in a light most favorable to the losing side are not disputed. Yes. It's only inferences to be drawn from the facts, right? Correct. And Ornelas and this court has said that in that case, this is de novo plus. This is de novo with special deference to resident judges and the conclusions and reasonable inferences they draw on the basis of their knowledge of the local circumstances. Let me read you the actual passage from Ornelas. Is it de novo plus for a Terry stop or for a Fourth Amendment probable cause determination? I believe it's for both reasonable suspicion and probable cause determinations. For... The Supreme Court said, a trial judge views the facts in a particular case in a light of the distinctive features and events of the community. This is a judge who was aware of the community circumstances. She looked at what happened here on Bunny Day in 2015 and said this was a technique. This... The officers were not simply showing up in response to these stale nine months. Let's assume that's true. Yes. Let's assume this was meant to make people look suspicious so they could then stop them. Yes. Don't we still look... Even if it's a bad technique, it's not an illegal technique in the sense that they didn't violate anybody's rights in the technique. Don't we then still look at the objective facts of the case and see whether or not they add up to reasonable suspicion? That's true, Your Honor, but then we draw certain reasonable inferences from the facts that are there. And whether you draw one... For instance, let's take one that the government and the court dispute. The government makes a big deal about the fact that Mr. Reed was walking back into the park when he was stopped, even though the police said their goal was to stop the people who got furthest away. In fact, one person completely left the park unmolested. They didn't go after him. They went after Mr. Reed, who was coming back into the park. The government says that's highly suspicious, but the district court drew a different reasonable inference from this saying, that's not suspicious, he's coming back to ward police. Yeah, my problem with that inference is that I suppose if he'd gotten in the car and driven away, the government would have viewed that as evidence of suspicion too, so that his actions after going to the car seems to me... Because whatever he did after going to the car, one would argue that it was suspicious. That's right. But this is an example of how the district court had one reasonable inference, the government doesn't like that inference. So cut... I'm throwing out that inference from walking back for a second. Add up the things that happen the moment he leaves the car. What do we have? Let me mention one other thing, the gang colors. The court found without dispute that he was a gang member. Interesting, as far as this being a suspicion of criminality, which of course is what we're concerned with, with the Terry stop, the testimony was, this was a bunny day, the Bunny Boys was having a holiday here, he had Bunny Boys colors on. The cops said, the police said, what they were concerned about were rival gangs coming, disturbing the festivities, causing trouble. But the Supreme Court continually reminds us that we don't look into the subjective motives of the police. They may have acted with malice or forethought here to provoke somebody to indicate, to give reasonable suspicion. In fact, I think that's what the record shows, and the judge correctly perceived that. The question is, if what happens thereafter adds up, and the cases tell us that while gang membership isn't enough, it's a factor to be considered. Leaving isn't enough, but it's a factor to be considered. So when you add all that to the fact that he obviously secretes something in the car, and given the officer's experience that that normally means contraband, why isn't it enough to meet the very low level of Terry's suspicion? Your Honor, I don't think it does, but let me just make, in my short time, just make one other point that I think came up earlier, and that's the case of United States versus Job, that's a case that I cited in a 28-J, that says that if the person's prior conviction for the summary, the probation fourth waiver, is not based on a violent felony, as Judge Bea pointed out, then the waiver is not. And what does his record doesn't tell us? What... Actually, his record is in the record because the government put it in its briefing, and I... Well, the record is messed up on this, isn't it? At one point, there's some indication that he was on parole. There's another time there's an indication he's on probation. Where in the copy of his waiver and or prior conviction? Well, we don't have a copy of the waiver, but what we have is his prior convictions, the government put that into its original brief in opposition to the motion to suppress. And what was that prior conviction? Give us the record, sir. Let me do that. I apologize, Your Honor, but I... And if you wanna file a 28-J on it, that's fine, too. I must admit, I was unable to find it in the record. We gave Ms. Hong four minutes extra, so you can take a little bit more time. Your Honor, it's... It's not in the excerpts of record and... Do you think it's attached to the government's... I believe it is in the excerpt, Your Honor, because it was in the government's motion. The government included his criminal printout record in its motion in opposition... So in their opposition to the motion to suppress? That's correct. And they are all drug felonies. They are nonviolent drug convictions. You stipulate to it? Can you give us a citation? Yes, Your Honor. The ER 239... 239? Contains the prior conviction. And what was the conviction? Three prior drug offenses, one prior felon in possession of a firearm offense, and a grand counts... When you say they're in the record, they're in a motion where the government asserts what they are, as opposed to a copy of anything, right? That's what I'm looking at at 239. Yes, Your Honor. The government says, in addition, record checks revealed the following relevant criminal history, but we don't have the actual conviction or the waiver in the record. And I'd also point out, Your Honor, is that it's one thing under Job that the person didn't actually have a violent felony, which would activate the fourth waiver. Job also points out that if the police at the time don't know what the nature of that prior is, that has the same effect. Do you dispute the representation by Ms. Hong that the cops knew about the waiver, and they went to look at the car? I would say, at the very least, the record is unclear about it, because there was some discussion. The district court questioned one of the officers about, what is it that you get back when you ask about the fourth waiver? Because she was asking, tell me the specific wording of the fourth waiver. And at least they're told that there's a fourth waiver before... They're told there's a fourth waiver, and one of the officers said they have some information about the person's prior record, but then they never said what it was, or in this case, what Mr. Reed's record was. Simply that the organization, the agency that provides them with this information, has some information about their prior record, but they couldn't give that, they didn't give that, it's not in the testimony. The only thing in the testimony is that he did have a fourth waiver, but the conditions, even the judge wanted to know what they were. I'm just trying to... I've seen this part, and my question was perhaps imprecise. I'm looking at page 239, it doesn't indicate for which of the offenses the fourth waiver was in effect, is that correct? That's my understanding. I thought the closest I could figure out... Yeah, no, you've pointed us to something in the record, but I guess I was asking the question in a more... Five years probation in the 1998 conviction... Right, but we don't know whether that's the... Yes. We don't know whether that's the one, and there are others that may or may not have been probation, right? The government doesn't list that as part of the sentence. So we just can't tell on this record whether or not his fourth waiver was in connection with which crime and whether it was probation or parole, right? Absolutely not. Even if the officer, even if it's not clear even if the record leaves uncertain whether the officers knew the specific nature of his convictions, they did know that he had this fourth waiver. So he did have a record of some kind, is that... They were aware of that, is that fair? Yes, I think it's fair. So if... Would then be a reasonable inference on their part, given the fact that he has a record and given the way in which he is acting, everything that's been described about how he walks out of a park and goes to the car and put something in the car, would it be a reasonable inference for them to say, well, he's acting like somebody who knows in light of his record, whatever the specifics of the record are, he's acting like someone who knows, but he's not supposed to have a gun in his possession. So he's acting like someone who has a record of a felon and hence knows he's not supposed to have a gun. Would that be a reasonable inference for the officers to make? I can't say, Your Honor. All I can do is I will just concur what the district court said. It seems like what Mr. Reed did was exactly what the police expected to happen when they set this up. They expected skitterish gang members to move away that would allow them to rustle some people off. That's why they were there. So that's why you think the Terry stop was improper? Correct. Assume for a second, just so that I understand what your position is on this. Assume that the Terry stop was proper and the police thereby learned whatever they communicated, which the record seems to say, this guy has a record and he's on a fourth waiver. I don't think that's disputed. If you know, and they've also looked into the car at that point and seeing what appears to be the outlines of a firearm in the pouch. If somebody is on a fourth waiver and appears to have possessed a firearm, does that give you a probable cause to think that a crime has been committed? I wouldn't say so, Your Honor, because I mean, I have a separate argument. I know I've run out of time. Nobody argues this in their briefs, that's what I mean. Yeah, that's just the problem. This just wasn't teed up. And that means that because the they didn't show that genuinely there was probable cause. They didn't show there was independent. They didn't show that the police officers knew that this was a valid waiver under Job. They couldn't have because the case hadn't been decided yet. They didn't even show that this was not an arrest, a de facto arrest, rather than simply a Terry stop, in which case they would have needed probable cause at ab initio, not simply reasonable suspicion. And I argued that in my brief, that this is just like Washington, this is just like Edwards, that this was a full on arrest, not simply a Terry stop. And they haven't shown probable cause to stop him at that point. Thank you very much. Thank you, Your Honor. I'm sorry we took you past your time. The case will be submitted. United States Article of the Read. Thank you, counsel, for a very interesting presentation and argument.
judges: Lipez, Bea, Hurwitz